# In the United States Court of Federal Claims

Nos. 11-489C & 11-500C

(Filed Under Seal: September 29, 2011)

(Reissued for Publication:  October 11, 2011)

*********************************************

| | |
|---|---|
| * | |
| SEABORN HEALTH CARE, INC.,     * | |
|     * | |
| and     * | |
|     * | |
| TOP ECHELON CONTRACTING, INC.,     * | |
|     * | Post-Award Bid Protest; Lack |
| Plaintiffs,     * | of Standing; Interested Party |
|     * | Status; Weights Applied to |
| v.     * | Evaluation Criteria; Reasonable |
|     * | Past Performance Evaluation; |
| THE UNITED STATES,     * | Lack of Prejudice to Protester; |
|     * | Supplementing the Certified |
| Defendant,     * | Administrative Record. |
|     * | |
| and     * | |
|     * | |
| TEAMSTAFF GOVERNMENT SOLUTIONS,     * | |
| INC.     * | |
|     * | |
| Defendant-Intervenor.     * | |
|     * | |

*********************************************

*Janine S. Benton,* with whom were *John M. Murdock, Kathy C. Potter*, and *Rosanne E. Stafiej*, Benton, Potter & Murdock, P.C., Falls Church, Virginia, for Plaintiff Seaborn Health Care, Inc.

*Michael R. Golden*, with whom were *Michael A. Hordell, Heather Kilgore Weiner*, and *Samuel W. Jack*, Pepper Hamilton LLP, Washington, D.C., for Plaintiff Top Echelon Contracting, Inc.

*Joshua E. Kurland*, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director, Commercial

Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., *Barbara J. Stuetzer*, VA National Acquisition Center, Of Counsel, for Defendant.

*Richard J. Conway*, with whom were *Merle DeLancey* and *Michael Slattery*, Dickstein Shapiro LLP, Washington, D.C. for Defendant-Intervenor Teamstaff Government Solutions, Inc.

<u>OPINION AND ORDER</u>[1]

WHEELER, Judge.

In this post-award bid protest, two disappointed offerors, Seaborn Health Care, Inc. ("Seaborn") and Top Echelon Contracting, Inc. ("Top Echelon"), challenge a Blanket Purchase Agreement ("BPA") awarded by the Department of Veterans Affairs ("VA") to Teamstaff Government Solutions, Inc. ("Teamstaff"). The BPA is for pharmacist and pharmacy technician staffing services at seven VA mail order pharmacy facilities in the United States. The VA conducted the procurement as a Federal Supply Schedule ("FSS") purchase under Federal Acquisition Regulation ("FAR") Subpart 8.4. The VA evaluated proposals on a "best value" basis, taking into account each offeror's technical excellence, past performance, socioeconomic status, and price. The VA reserved the right to make separate awards for each of the seven facilities, but instead it made one award for all of the facilities to Teamstaff.

For the reasons explained below, the Court must dismiss Seaborn's protest for lack of standing. While Seaborn submitted a proposal for all seven VA facilities, its rating on the non-price evaluation factors was no better than eighth among eleven evaluated offerors. Seaborn contests the VA's evaluation of its own proposal as well as Teamstaff's, but it does not question the evaluation of any of the other six offerors who were rated higher than Seaborn overall. On the record presented, the Court finds that Seaborn could not materially improve its position to be in contention for award. Accordingly, Seaborn is not an "interested party" under 28 U.S.C. § 1491(b)(1) because it does not have a "substantial chance" of being awarded the contract for any of the VA facilities. <u>Labatt Food Serv., Inc. v. United States</u>, 577 F.3d 1375, 1378 (Fed. Cir. 2009); <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d 1352, 1359 (Fed. Cir. 2009).

---

[1]   The Court issued this decision under seal on September 29, 2011 and invited the parties to submit proposed redactions of any competition-sensitive, proprietary, confidential, or other protected information within seven days, on before October 6, 2011. On that date, the Court received filings from all parties that were inconsistent in their approach to redactions. On October 7, 2011, the Court held a conference call with all counsel of record to resolve these inconsistencies. Following a brief discussion, counsel agreed to minimize redactions in the interest of honoring the "presumption of public access to judicial records." <u>Baystate Techs., Inc. v. Bowers</u>, 283 F. App'x 808, 810 (Fed. Cir. 2008) (citing <u>Siedle v. Putnam Invs., Inc.</u>, 147 F.3d 7, 9 (1st Cir. 1998); <u>Poliquin v. Garden Way, Inc.</u>, 989 F.2d 527, 533 (1st Cir. 1993)). The redactions in the decision are indicated by brackets and three asterisks, [***].

Top Echelon submitted a proposal for only one VA facility near Dallas, Texas, and the VA rated Top Echelon very highly on the non-price evaluation factors. The VA regarded Top Echelon as equal to Teamstaff, but Top Echelon's price was substantially higher than Teamstaff's. Thus, on the basis of a lower price, the VA awarded the Dallas facility to Teamstaff. Top Echelon contests the award to Teamstaff on multiple grounds: (1) that the VA did not employ the evaluation criteria stated in the solicitation; (2) that the VA failed to consider negative past performance information regarding Teamstaff; (3) that the VA held an unstated preference for a single vendor; and (4) that Teamstaff did not possess a current FSS contract as required by the solicitation. The Court will address each of Top Echelon's arguments in turn, but concludes that Top Echelon's protest must be denied. Even if the VA did not conduct a perfect procurement in this instance, the VA's selection of the lower-priced of two highly rated proposals was a reasonable decision that the Court will not disturb. See Andersen Consulting v. United States, 959 F.2d 929, 932 (Fed. Cir. 1992) ("Any good lawyer can pick lint off any Government procurement, pundits say. We will not set aside an award, even if violations of law are found, unless those violations have some significance.") (quoting Andersen Consulting, GSBCA No. 10833-P, 91-1 BCA ¶ 23,474 (1990) at 117,759)).

## Factual Background[2]

On August 17, 2010, the VA issued Request for Quotation VA-797M-10-RQ-0212/GSA E-Buy RFQ 496494 to establish BPAs for the staffing of six VA Consolidated Mail Order Pharmacy ("CMOP") facilities. The six CMOP facilities are located in Charleston, South Carolina; Hines, Illinois; Lancaster (Dallas), Texas; Leavenworth, Kansas; Murfreesboro, Tennessee; and Tucson, Arizona. The solicitation also included the staffing of a "Meds by Mail" facility in Dublin, Georgia. (AR 14.) The CMOP facilities prepare and dispense prescriptions and medical products by mail to military veterans and other patients. (AR 15.)

The VA intended to award one BPA for staffing services at each facility by contracting with companies who possessed General Services Administration ("GSA") FSS contracts. (AR 30, 2492.) The VA sent the solicitation only to prospective offerors holding a valid FSS contract for pharmacists and pharmacy technicians under FSS Schedule 621 I, Professional and Allied Healthcare Staffing Services. (AR 14, 40-46.) The VA requested in the solicitation that offerors quote discounts from their existing FSS contract prices for pharmacists and pharmacy technicians. (AR 31.) The BPAs were to constitute one-year agreements with four option years. (AR 28.) The BPA would expire at the end of the agreement, or upon the expiration of the FSS contract, whichever occurred earlier. Id.

---

[2] The facts herein are drawn from the VA's certified administrative record of the procurement, as supplemented by the Court. Citations to the administrative record are to the consecutive page numbers provided by Defendant, and are designated as "AR ___."

The VA employed a best value method for evaluating proposals.  The VA advised offerors in the solicitation that the BPAs "will be established with those responsible offerors whose offers conform to the solicitation and will be most advantageous to the Government, price and other factors considered."  (AR 30.)   The solicitation further stated that the non-price evaluation factors of technical excellence, past performance, and socioeconomic status were listed "in descending order of importance" and "when combined, are slightly more important when compared to price."  Id.  The VA's internal Source Selection Plan Outline indicated the weight for each evaluation factor:  technical excellence (40%), past performance (6%), socioeconomic status (5%), and price (49%).  (AR 6-11.)   The VA divided the technical excellence factor into two sub-factors: approach to the scope of work and quality control plan, each with a weight of 20%.  (AR 7.)   The VA intended to evaluate proposals by using an adjectival rating system for the non-price factors.  Id.  The VA would evaluate price by using estimated annual hours for pharmacists and pharmacy technicians at each location, multiplied by the offeror's firm fixed hourly rates for that location.  (AR 31, 36-37.)

By the proposal closing date of September 24, 2010, the VA received proposals from 24 offerors.  (AR 2492-93.)   Among the offerors were the three parties to this proceeding:  Seaborn, Top Echelon, and Teamstaff.  Id.  Seaborn is the incumbent contractor at the Leavenworth, Kansas facility; Top Echelon is the incumbent at the Dallas facility; and Teamstaff is the incumbent at the other five facilities.  (AR 1574-1600, 1635-44, 1610-18.)

The VA assembled a six-person technical evaluation team to evaluate proposals.  (AR 2493.)   This team met on October 12-14 and November 8-11, 2010 at the VA's National Acquisition Center in Hines, Illinois to perform the evaluation.  Id.  Of the 24 proposals received, the VA determined that thirteen were unacceptable based upon "a lack of information provided and identification of significant weaknesses and deficiencies."  (AR 2496.)

The adjectives to be used for rating the technical excellence factor were: Exceptional, Above Average, Average, Marginal, and Unacceptable.  (AR 2494-95.)   For the past performance factor, the adjectives were:  Excellent, Very good, Good, Fair, Poor, and Neutral.  (AR 2507.)   For the socioeconomic factor, the adjectives were:  Excellent, Very good, Good, Fair, and Poor.  (AR 2514.)   The VA defined each of these adjectives in its Source Selection Plan Outline.  (AR 8-11.)   The contracting officer prepared a 51-page Price Negotiation Memorandum containing a detailed evaluation of the eleven proposals remaining after the unacceptable proposals were eliminated.  (AR 2492-2542.)   The contracting officer also included a detailed best value trade-off analysis for each of the six VA CMOP facilities and the "Meds by Mail" facility.  (AR 2518-42.)   The following chart, at AR 2517, depicts the ratings assigned to Teamstaff, Top Echelon, and Seaborn for the non-price evaluation factors:

| Vendor | Approach to the Scope of Work | Quality Control Plan | Past Performance | Socioeconomic Consideration |
|---|---|---|---|---|
| Teamstaff | Exceptional | Exceptional | Very Good | Good |
| Top Echelon | Exceptional | Exceptional | Very Good | Good |
| Seaborn | Marginally Acceptable | Average | Fair | Very Good |

In the category of "approach to the scope of work," there were seven offerors that were rated higher than Seaborn.  (AR 2517.)  For "quality control," there were five offerors rated higher than Seaborn.  Id.  For "past performance," there were seven offerors rated "Neutral," but still three offerors rated higher than Seaborn.  Id.  Overall, Seaborn's proposal was no better than eighth among the eleven evaluated proposals in the non-price factors.   Seaborn, as a "woman-owned, small disadvantaged business," received a "Very good" rating for the "socioeconomic" factor.  Id.

The VA evaluated the offerors' prices for the first year of the contract.  For the Lancaster (Dallas) CMOP facility, Teamstaff submitted a price of $3,579,243.20, and Top Echelon submitted a price of [***], a difference of [***].  (AR 2517.)  On May 5, 2011, the VA awarded a BPA for all seven facilities to Teamstaff.  (AR 2545-46.) Following agency debriefings, Top Echelon and Seaborn filed protests at the Government Accountability Office ("GAO") on May 25, 2011 and June 6, 2011, respectively.  (AR 2579-2731, 3055-75.)  Upon receipt of these protests, the VA suspended Teamstaff's performance at the CMOP and "Meds by Mail" facilities.  (AR 2761, 3088.)  On July 18, 2011, Seaborn withdrew its protest at the GAO.  (AR 3236.)  Seaborn commenced its suit in this Court on July 27, 2011, triggering the application of GAO's rule that it will not consider protests that are the subject of litigation by a court of competent jurisdiction.  4 C.F.R. § 21.11(b) (2011).  Top Echelon filed suit in this Court on August 2, 2011.

The Court considered these protests on an expedited basis.  After receiving Top Echelon's complaint, the Court consolidated the Seaborn and Top Echelon protests for all proceedings.  Defendant filed the certified administrative record on August 5, 2011. Seaborn and Top Echelon then filed motions for judgment on the administrative record, to which Defendant and Teamstaff responded and cross-moved for judgment on the administrative record.  Teamstaff and Top Echelon filed motions to supplement the administrative record.  The Court heard oral argument on September 16, 2011.  The protests are now ready for decision.

Discussion

A. Standard of Review

Under 28 U.S.C. § 1491(b)(4), the Court's review of a bid protest challenging an agency's procurement action is governed by the standards in the Administrative Procedure Act, 5 U.S.C. § 706. These standards permit the Court to set aside an agency's action or decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under these standards, the disappointed bidder or offeror "bears a 'heavy burden' " to show that an award decision is irrational. Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (internal citation omitted). The Federal Circuit has observed that "[i]f the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion." Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). The protester's burden increases when the agency awards a contract on a "best value" basis. Galen Med. Assocs. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (quoting E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996)).

Challenges regarding the details of the procurement process in matters such as technical ratings " 'involve discretionary determinations of procurement officials that a court will not second guess.' " Software Eng'g Servs., Corp. v. United States, 85 Fed. Cl. 547, 548 (2009) (quoting E.W. Bliss, 77 F.3d at 449). The Court gives the "greatest deference possible" to a procurement official's evaluation of a proposal's technical excellence or quality. Fort Carson Support Servs. v. United States, 71 Fed. Cl. 571, 598 (2006) (internal citations omitted); see also Benchmade Knife Co. v. United States, 79 Fed. Cl. 731, 735 (2007) ("Agency technical evaluations, in particular, should be afforded a greater deference by the reviewing court.").

A similar deferential standard applies when the Court is reviewing an agency's assessment of past performance evaluations. Commissioning Solutions Global, LLC v. United States, 97 Fed. Cl. 1, 9 (2011) ("[I]n cases such as this, when a negotiated procurement is involved and at issue is a performance evaluation, the greatest deference possible is given to the agency – what our Court has called a 'triple whammy of deference.' ") (quoting Gulf Grp, Inc. v. United States, 61 Fed. Cl. 338, 351 (2004))); see also Blackwater Lodge, 86 Fed. Cl. at 493 ("mere disagreement" with past performance evaluations is insufficient to disturb agency's decision).

Finally, even if a protester demonstrates errors in the procurement process, it still must show that it was "significantly prejudiced" by those errors. Bannum, Inc. v. United States, 404 F.3d 1346, 1353 (Fed. Cir. 2005). A protester does not meet the prejudice requirement if the protester's allegations, even if proven, would not change the results of

the procurement process.  <u>See</u>, <u>e.g.</u>, <u>Data Gen. Corp. v. Johnson</u>, 78 F.3d 1556, 1563 (Fed. Cir. 1996) (finding no prejudice where, despite pricing error, protester's prices remained substantially higher).

### B. <u>Standing</u>

Seaborn alleges that the VA performed a defective evaluation of Seaborn's proposal in the areas of technical excellence and past performance, and of Teamstaff's past performance.  Specifically, Seaborn raises a number of allegations that the VA improperly downgraded the rating of its proposal "on the basis of findings that are starkly at odds with, and irrational in the face of, the express terms of the Seaborn proposal." (Seaborn's Mem. 21, Aug. 21, 2011.)  Similarly, Seaborn attacks the VA's evaluation of its past performance as being "arbitrary and capricious," and states that it should have received a "Good" or "Very good" rating instead of the "Fair" evaluation it actually received.  <u>Id.</u> at 36.  Seaborn also challenges the VA's evaluation of Teamstaff's past performance alleging that the VA "arbitrarily overlooked Teamstaff's negative past performance." <u>Id.</u> at 39.

As noted above, Seaborn's proposal ranked no better than eighth out of eleven in the VA's evaluation of non-price factors.  (AR 2517.)  Seaborn would have needed to overtake six other proposals even to be in contention for contract award, but Seaborn does not contest the VA's evaluation of the six other offerors.  To reach a rating equal to Teamstaff's, Seaborn would have needed to increase its evaluation in "approach to the scope of work" from "Marginally acceptable" to "Exceptional," in "quality control plan" from "Average" to "Exceptional," and in "past performance" from "Fair" to "Very good."  <u>Id.</u>  As a matter of law, the challenges that Seaborn advances are among the most difficult to sustain, given the level of deference afforded to the agency in evaluating the areas of technical excellence and past performance.  Even if the Court were to find that the agency erred in some respect in evaluating Seaborn's or Teamstaff's proposal, the Court cannot fathom how Seaborn could make the gigantic leap necessary to be in contention for award.

To establish standing in a bid protest in this Court, the protester must be an "interested party."  28 U.S.C. § 1491(b)(1).  "Interested parties" are those "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract."  <u>Am. Fed'n of Gov't Emps. v. United States</u>, 258 F.3d 1294, 1302 (Fed. Cir. 2001).  To show a direct economic interest, the protester must demonstrate that it had a "substantial chance" of receiving the contract award.  <u>Labatt Food Serv., Inc. v. United States</u>, 577 F.3d 1375, 1379 (Fed. Cir. 2009); <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d 1352, 1359 (Fed. Cir. 2009); <u>Rex Serv. Corp. v. United States</u>, 448 F.3d 1305, 1308 (Fed. Cir. 2006) (internal citations omitted).

In this case, the Court finds that Seaborn has not established the requisite standing to pursue its protest.  Applying a reasonable assessment, none of Seaborn's allegations, either individually or in combination, would place Seaborn in line for award. Accordingly, Seaborn's protest is dismissed.

## C. Supplementing the Administrative Record

During the course of these proceedings, the Court received three motions to supplement the administrative record.  On August 26, 2011, Top Echelon filed a motion to add the following documents to the administrative record:  (1) a publicly available summary of a news report on a lawsuit filed against Teamstaff concerning its practices at the VA's Hines, Illinois CMOP facility; (2) excerpts from Teamstaff's Securities and Exchange Commission filings of December 31, 2010 and March 31, 2011; (3) a news report from an industry website, "Staffing Industry Analysts" and a Teamstaff press release issued June 27, 2011, regarding Teamstaff's settlement of claims related to a Department of Justice investigation; (4) declarations of Top Echelon's President, Debra Fledderjohann, dated August 1 and August 10, 2011; and (5) Modification 34 of Teamstaff's FSS contract.  Top Echelon had attached all of these documents except the second Fledderjohann declaration in an appendix to its August 2, 2011 complaint.

On August 19, 2011, Teamstaff filed a motion to strike, or in the alternative, to supplement the administrative record.  Teamstaff sought to remove some of the documents included in the appendix to Top Echelon's complaint or to supplement the administrative record with the following five documents:  (1) a July 17, 2009 Department of Justice press release; (2) an August 13, 2009 plea agreement of Patriot Services, Inc.; (3) an August 13, 2009 plea agreement of Stephanie D. Blackmon; (4) August 27, 2010 orders dismissing Equal Employment Opportunity Commission ("EEOC") complaints; and (5) the Department of Justice's April 21, 2011 notice of closure of grand jury investigation.  Teamstaff filed another motion to supplement the administrative record on September 8, 2011, to add the declaration of Teamstaff's President, Kevin L. Wilson, regarding his recollection of signing Modification 34 of Teamstaff's FSS contract.

In proceedings before this Court that are based upon a review of the administrative record, "the parties' ability to supplement the administrative record is limited."  Axiom Res. Mgmt. v. United States, 564 F.3d 1374, 1379-80 (Fed. Cir. 2009).  The Supreme Court has observed that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973).  "The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the 'arbitrary and capricious' standard into effectively de novo review.' "  Axiom, 564 F.3d at 1380 (quoting Murakami v. United States, 46 Fed. Cl. 731, 735 (2000), aff'd, 398 F.3d 1342 (Fed. Cir. 2005)).  Courts should permit supplementation of the administrative

record only where "the omission of extra-record evidence precludes effective judicial review." Murakami, 46 Fed. Cl. at 735.

Applying these principles to the present case, the Court provided the parties with its ruling on the motions to supplement the administrative record at the beginning of the September 16, 2011 oral argument.   The Court allowed supplementation as to the materials relating to Teamstaff's past performance, but denied the motions in all other respects.   The VA's contracting officer represented that she had considered all past performance information for all offerors, (AR 2925-28), and the Court allowed the addition of Teamstaff's past performance information so the parties could address the accuracy of the contracting officer's representation.   Nearly all of this information existed as of May 5, 2011 when the contracting officer signed the Price Negotiation Memorandum, (AR 2542), and thus could have been considered in evaluating Teamstaff's past performance.   The Court determined that the addition of these materials would permit effective judicial review.

The remainder of the materials do not fall within the same category.   The declarations of Top Echelon's President, Ms. Fledderjohann, relate to a wage determination issue that has no bearing on the outcome of the case, a hearsay telephone conversation with a representative of another prospective offeror, and an explanation of why the Dallas CMOP contract is important to Top Echelon's business.   Similarly, the declaration of Teamstaff's Mr. Wilson is not necessary to the Court's review, and is not even in the proper format to be accepted as a valid declaration.   Finally, Modification 34 of Teamstaff's FSS contract already existed in the administrative record, (AR 2840-41), and did not need to be included again.   Accordingly, the Court denied the motions to supplement as to these documents.

D.   Top Echelon's Protest Grounds

Top Echelon has asserted four main grounds for protest:   (1) that the evaluation factor weights actually employed by the VA were misleading to offerors when compared to the description of the evaluation criteria in the solicitation; (2) that the VA performed an unreasonable past performance evaluation of Teamstaff; (3) that the VA had a preference for a single award for all seven facilities, which constituted an unstated evaluation criterion; and (4) that, by virtue of a defect in Modification 34, Teamstaff did not have a valid FSS contract in place at the time it submitted its proposal.   The Court will address each of these protest grounds below.

1.   Misleading Evaluation Criteria

Top Echelon argues that the evaluation factor weights actually applied by the VA in evaluating proposals were misleading.   The solicitation indicated that the non-price evaluation factors of technical excellence, past performance, and socioeconomic status

were listed "in descending order of importance," and that these factors, "when combined, are slightly more important when compared to price." (AR 30.) Further, the technical excellence factor was divided into two sub-factors: "approach to the scope of work" and "quality control plan," each of equal importance. Id. In the VA's internal Source Selection Plan Outline, the weights assigned to the evaluation factors were: technical excellence (40%), past performance (6%), socioeconomic status (5%), and price (49%). The sub-factors under technical excellence were assigned a weight of 20% each. (AR 7-11.)

Top Echelon contends that the wide weight disparity among the non-price evaluation factors was misleading and that the VA should have provided better, more accurate information to offerors in the solicitation. Top Echelon says that, if it had known the true importance of the evaluation factors, it might have emphasized different points in its proposal and might have offered a lower price. The Court agrees that the VA could have described the evaluation factors more accurately. The VA could have said that technical excellence is "significantly more important than" past performance or socioeconomic status, or it simply could have provided the actual weights to be employed. While the information in the solicitation was technically accurate, it might have been better stated.

However, the Court does not find that Top Echelon suffered any prejudice from the information contained in the solicitation. In preparing its proposal, Top Echelon had the same information that all other prospective offerors possessed. As Top Echelon's counsel acknowledged at oral argument, the VA's method did not violate any law or regulation, and this protest ground alone would not result in a sustained protest. (Oral Arg. Tr. 10-12, Sept. 16, 2011.) As for Top Echelon's proposed price, there is no support for the idea that Top Echelon would have offered a lower price if it had received more accurate information for the non-price factors. Given the language in the solicitation, a 49% weight applied to the price factor should not have surprised any offeror. Moreover, Top Echelon received the highest rating possible for technical excellence, so it is difficult to understand how Top Echelon suffered from not knowing the weight given to that factor. Top Echelon received the same past performance rating as Teamstaff, so these ratings offset each other regardless of the weight applied.

The Court views Top Echelon's contention as an area that the VA might have handled in a better fashion by providing more accurate information, but not as a matter that would have affected the VA's ultimate decision to award to Teamstaff. Accordingly, the Court concludes that Top Echelon did not suffer any prejudice from the information provided in the solicitation or from the weights actually used in the evaluation of proposals.

2.   Unreasonable Past Performance Evaluation of Teamstaff

In evaluating proposals, the VA gave Teamstaff the second highest rating of "Very good" on the past performance factor.  The VA defined a "Very good" rating as one where the offeror "consistently met and often exceeded contract performance and customer's requirements" and where "[v]ery few significant weaknesses or complaints were noted."  (AR 10, 2507.)  The contracting officer provided an extensive analysis of Teamstaff's past performance data, explaining in full the reasoning for Teamstaff's "Very good" rating.  (AR 2507-08.)  During the GAO protest proceedings, the contracting officer provided a statement that she considered all of the data relating to Teamstaff's past performance.  (AR 2925-26.)

In evaluating an offeror's past performance, FAR 15.305(a)(2) affords agencies considerable discretion in deciding what data is most relevant.  PlanetSpace Inc. v. United States, 92 Fed. Cl. 520, 539 (2010).  "Thus, when evaluating an offeror's past performance, the [contracting officer] 'may give unequal weight,' or no weight at all, 'to different contracts when [the contracting officer] views one as more relevant than another.' "  Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 718 (2010) (quoting SDS Int'l, Inc. v. United States, 48 Fed. Cl. 759, 769 (2001)).

Top Echelon challenges the VA's "Very good" past performance rating of Teamstaff by selectively drawing upon a few negative comments among an extensive array of favorable data.  Top Echelon notes a small set of customer remarks that would suggest unsatisfactory performance at the VA's CMOP facilities in Tucson, Arizona; Chelmsford, Massachusetts; and Hines, Illinois.  However, as the contracting officer found, (AR 2926), these comments were more than offset by favorable information about Teamstaff's performance at the same locations.  Moreover, at other large VA facilities where Teamstaff is the incumbent, Teamstaff received consistently favorable ratings.

Top Echelon also focuses on various legal proceedings in which Teamstaff has been involved.  These allegations relate to:  (1) a charge that Teamstaff committed labor and civil rights violations regarding the termination of certain employees at the Hines CMOP facility; (2) a subpoena that Teamstaff received in April 2007 regarding "possible violations of federal law at the VA, including wrongdoing by government officials;" and (3) a billing irregularity at the Leavenworth, Kansas CMOP facility, identified in Teamstaff's proposal for this procurement.

The contracting officer was aware of these circumstances and has stated that she "did not disregard any negative past performance information for Teamstaff or any other offeror."  (AR 2926.)  She noted that the labor and civil rights allegations "did not impact contract performance."  Id.  Among the documents added to the administrative record, the Court observes that, on August 27, 2010, the EEOC dismissed the labor and civil rights

charges, stating that based upon its investigation, it could not substantiate the allegations against Teamstaff.  (AR 3330-43.)

With regard to the subpoena Teamstaff received in April 2007, the Court concludes that the facts relevant to this inquiry do not adversely affect Teamstaff, and the contracting officer properly disregarded these facts.  Teamstaff acquired an entity known as RS Staffing in June 2005.  Stephanie D. Blackmon was an employee of RS Staffing from approximately January 2000 until April 2007 while also representing herself as President of Patriot Services, Inc.  (AR 3302.)  On July 17, 2009, the Department of Justice issued a press release announcing plea agreements entered into by Ms. Blackmon and Patriot Services, Inc.  (AR 3249-50.)[3]  These plea agreements make no mention of any wrongdoing by Teamstaff.  (AR 3251-87, 3288-3329.)  On April 11, 2011, the Department of Justice notified Teamstaff that it had closed the RS investigation.  (AR 3344.)

Finally, Teamstaff's billing irregularity at the Leavenworth CMOP appears to have been an isolated incident.  Teamstaff detected through its accounting system that some billing misconduct had occurred, involving a Teamstaff employee and a VA manager.  Immediately upon discovering this irregularity, Teamstaff notified the contracting officer and the VA's Inspector General ("IG").  (AR 179.)  Thereafter, in coordination with the IG, Teamstaff terminated the offending manager.  Id.  Teamstaff's overall past performance rating for the Leavenworth CMOP facility was "Outstanding." (AR 2508.)

Based upon a careful review of the entire record, the Court finds that the contracting officer's "Very good" past performance rating of Teamstaff was reasonable. Teamstaff did not receive the highest rating of "Excellent," but the contracting officer properly determined that Teamstaff deserved a "Very good" rating based upon all of the past performance data provided.  The Court sees no basis whatsoever to set aside or downgrade this reasonable rating for Teamstaff.

### 3.  Unstated Preference for a Single Award

Top Echelon argues that the VA had "a preference for offerors that submitted quotes for all seven locations, as opposed to offerors such as Top Echelon Contracting that submitted a quote solely for the Dallas CMOP."  (Top Echelon Mem. 36, Aug. 10, 2011.)  In this regard, the Court notes that ten of the eleven evaluated offerors submitted proposals for all seven VA facilities, and that only Top Echelon submitted a proposal for a single location.  To support its position, Top Echelon relies mainly upon the contracting

---

[3]  Ms. Blackmon pleaded guilty to the charge of making false statements to the United States Small Business Administration so that Patriot Services, Inc. could qualify under Section 8(a) of the Small Business Act as a business owned and operated by socially and economically disadvantaged persons. (AR 3251-57.)

officer's "best value" analysis, where she regards Teamstaff as the best offeror for each of the seven locations, regardless of whether Teamstaff offered a higher or lower price than competing offerors.  (Top Echelon Reply Mem. 21-22, Aug. 26, 2011.)

The Court does not agree that the contracting officer's "best value" analysis reveals a bias to award all of the work to one offeror.  For the Dallas CMOP facility, Top Echelon was the only competitor with non-price evaluation ratings identical to Teamstaff, but the contracting officer decided to award to Teamstaff because of its significantly lower price.  (AR 2520.)  For the other six VA locations, no competing offeror had non-price ratings that were as good as Teamstaff's.  (AR 2517.)  Although Teamstaff offered higher prices than other offerors for these other six locations, the contracting officer determined that Teamstaff's prices were reasonable, and that the trade-off of having a higher-rated contractor at somewhat higher prices was justified.  (AR 2520-41.)  This "best value" analysis does not indicate an unstated preference for a single award.

Top Echelon also relies upon the fact that Teamstaff offered additional goods and services to the VA contingent upon Teamstaff receiving the work at all seven of the VA's locations.  (Top Echelon Reply Mem. 22, Aug. 26, 2011.)  The record shows that none of the individual VA evaluators, none of the consensus evaluations, and none of the contracting officer's comparative analyses even mentions a "single award proposition" from Teamstaff.  The Court finds no basis for this argument.

### 4.  Teamstaff's FSS Contract

Top Echelon alleges that Teamstaff was ineligible for award because its FSS contract had expired due to Teamstaff's failure to sign and return Modification 34.  See (AR 2840).  Top Echelon notes that a box on Standard Form 30, "Amendment of Solicitation/Modification of Contract," Section 13E, had been checked indicating that the contractor "is required to sign . . . and return [two] copies to the issuing office."  Id.  Top Echelon also observes that the contracting officer, Linda Smith, signed this modification on "2/25/10," but that Teamstaff's President, Mr. Wilson, did not sign the modification until "2/25/11."  Id.  Top Echelon thus contends that, due to the one-year disparity in the signatures, Teamstaff did not have a valid FSS contract in place between these two dates.  The modification bears an effective date of "3/1/10" in Section 3 of Standard Form 30.

The Court finds that Teamstaff's signature on Modification 34 was unnecessary to create a binding extension of Teamstaff's FSS contract.  Section 14 of Standard Form 30 expressly provides that it is a "unilateral modification" issued to exercise the Government's option to extend the term of the contract.  Id.  This section also provides that "[t]he extended performance is March 1, 2010 through December 31, 2010."  Id.  Modification 34 specifies that it is being issued pursuant to the authority in FSS clause AS 1508.  This clause in Teamstaff's FSS contract states:

AS 1508 OPTION TO EXTEND THE TERM OF THE CONTRACT
(MAR 2005)

The Government may require continued performance of this contract within the limits and at the prices specified herein.  The option clause may be exercised more than once to add 1 or more option year periods, but the total extension of performance hereunder shall not exceed 5 years.

> (a) The Contracting Officer may exercise the option by providing a written notice to the contractor no later than 60 days before expiration of the contract or option.

(AR 2826.)  Under this clause, the Government exercises its option unilaterally and does not need the signature or agreement of the contractor to make the extension binding. Were the situation otherwise, a contractor could avoid performing an option simply by withholding its consent if the prices or other terms had become unfavorable with the passage of time.  FAR 17.207, "Exercise of options," provides in paragraph (a) that "[w]hen exercising an option, the contracting officer shall provide written notice to the contractor within the time specified in the contract."  FAR 43.103, "Types of contract modifications," differentiates between bilateral and unilateral modifications.  It provides that modifications issued pursuant to an "Options clause," as here, are "signed only by the contracting officer."  FAR 43.103(b).  The regulations say nothing about requiring a contractor's consent to exercise an option.  Modification 34 thus created a binding extension of Teamstaff's FSS contract without the signature and return of the document by Teamstaff's President.  The Court does not need to consider the circumstances under which Teamstaff may have signed the document.

At various stages, Top Echelon included other grounds in support of its protest, but the major issues it raised are discussed above.  The Court considered all of Top Echelon's arguments, and the failure to address each and every contention in this opinion should not be read to suggest that any argument was overlooked.  None of Top Echelon's arguments would have altered the VA's selection of Teamstaff for the Dallas CMOP facility.

## Conclusion

Based upon the foregoing, the Court DISMISSES Seaborn's protest for lack of standing, DENIES Top Echelon's motion for judgment on the administrative record, and GRANTS Defendant's and Teamstaff's motions for judgment on the administrative record.  The motions of Top Echelon and Teamstaff to supplement the administrative record are GRANTED IN PART and DENIED IN PART, as indicated in Section C above.

On or before October 6, 2011, counsel for the parties shall carefully review this opinion for competition-sensitive, proprietary, confidential, or other protected information, and submit to the Court any proposed redactions before the opinion is released for publication.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge